Michael G. WAGNER and Debra
K. Wagner, husband and
wife, Plaintiffs,

v.

DRYVIT SYSTEMS, INC., a Rhode
Island Corporation, Defendant
and Third Party Plaintiff,

v.

Innovative Homes and Design, Inc.,
Third Party Defendant and
Third Party Plaintiff,

v.

Paul L. Kess, Inc., Third
Party Defendant.

No. 4:00CV3072.

United States District Court,
D. Nebraska.

Aug. 1, 2001.

David A. Hecker, Kutak Rock, LLP, Lincoln, NE, for Plaintiffs.

Thomas M. Locher, Douglas W. Krenzer, Locher, Cellilli Law Firm, Omaha, NE, for Dryvit Systems.

Mark A. Christensen, Kevin J. Schneider, Cline, Williams Law Firm, Lincoln, NE, for Innovative Homes and Design, Inc.

Robert T. Grimit, Baylor, Evnen Law Firm, Lincoln, NE, for Paul L. Kess, Inc.

## MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

This matter is before the court on plaintiff's "Motion to Compel and Motion for Sanctions to Dryvit Systems, Inc." (Filing 41) and the Motion for Protective Order filed by Defendant Dryvit Systems, Inc. (Filing 46) For the reasons stated below, I shall grant plaintiff's motion to compel to the extent set forth in this memorandum and order and award plaintiffs their reasonable expenses, including attorney fees, in bringing this motion. I shall deny defendant Dryvit's Motion for Protective Order requesting the court to deny plaintiffs' discovery requests and shall order the terms and conditions, including designation of time and place, to be followed by the parties in exchanging the discovery required by this order.

## DISCUSSION

Plaintiffs' Complaint alleges that the plaintiffs' home was constructed with an exterior insulation finish system (hereinafter referred to as "EIFS") manufactured by the defendant Dryvit Systems Inc. (hereinafter "Dryvit"). The plaintiffs allege that this siding system was defective and caused their home to become substantially rotted and contaminated with mold and mildew. The plaintiffs request an award for the damages caused by the alleged defects in the EIFS product.

On July 24, 2000, the plaintiffs served interrogatories and requests for production on Dryvit. On this Motion to Compel, the plaintiffs argue that Defendant's responses to In-

terrogatory numbers 6, 7, 10, 11, 15, 16, 17, 20, 21 and 22 and Request for Production numbers 4, 5, 6, 7, 9, 13, 15, 16 and 17 were insufficient, incomplete and unresponsive. Consistent with the allegations of plaintiffs' Complaint, plaintiffs' discovery requests focus on obtaining information from Dryvit concerning any defects in the EIFS system, knowledge by Dryvit of these defects and the representations made by Dryvit to customers prior to selling them this product. All such information is relevant to the claims presented and can be appropriately requested as discovery in this case. [See, e.g., *Baker v. General Motors Corp.*, 86 F.3d 811 (8th Cir. 1996) (discovery requests were appropriate and failure of manufacturer to produce records regarding customer complaints and similar accidents constituted willful violation of discovery order warranting imposition of sanctions)]

In response to plaintiffs' motion to compel and in support of its motion for protective order, Dryvit has provided this court with some but not all of the case management orders of Magistrate Judge Alexander Denson of the United States District Court for the Eastern District of North Carolina, who presides over the consolidated pretrial matters of several federal cases also arising from alleged damage to dwellings caused by the EIFS system. [*In Re: Stucco Litigation*, master file number 5:96–CV–287–BR(2)] Dryvit is one of the several defendants named in that suit and subject to its proceedings. Under Judge Denson's April 30, 1996 Case Management Order No. 2, Dryvit was to produce and preserve all documents relevant to damage claims allegedly caused by the use of EIFS systems and generated after January 1, 1985. Judge Denson further specifies seven categories of documents the defendants must produce. These category descriptions are substantially the same as those requested by the plaintiffs in this action. In addition, Dryvit is a defendant in a class action suit also pending in North Carolina entitled *Ruff v. Parex, et al.* and additional categories of documents responsive to requests for production in the *Ruff* litigation have been compiled.

Case Management Order No. 2 also references and incorporates an Exhibit C, which describes the document numbering and repository arrangement system approved and ordered by the court. This portion of the Order was not provided to this court by Dryvit but is a matter of court record available for review on this motion to compel. Under that order, all documents are to be Bates-stamped with consecutive numbers and a two-letter prefix to identify the source of the document. The two-letter prefix "DR" is to precede any Bates-stamped number for documents supplied by Dryvit. Exhibit C references fifteen potential sources of documents to be stored in the repository, with each assigned a separate prefix. Pursuant to the Order, as documents are used in the litigation, the parties must maintain a Document Number Log and when a document is actually used in litigation, it is to be assigned a number and with this number, a corresponding reference to its Bates number and a written description of the document.

According to its submission in opposition to plaintiffs' motion to compel, Dryvit has complied with the Case Management Order in *In Re: Stucco Litigation* and the discovery requests in *Ruff v. Parex*. All the responsive documents have been stored in a repository and Dryvit has updated the repository on several occasions. This repository now contains "almost every document requested by a typical plaintiffs' attorney in the EIFS residential cases." It is located in Raleigh, North Carolina and currently houses 146,832 documents. In other words, in 1996 and on numerous occasions since that time, Dryvit has been able to locate within its business files the categories of records that are being requested in this action.

On September 15, 2000, Dryvit provided a written response to plaintiffs' discovery in this case. Numerous objections were raised to include claims that the discovery was overly broad, unduly burdensome, vague and ambiguous, requested information protected from discovery as work product or attorney-client privileged information and sought confidential proprietary information and trade secrets. The majority of Dryvit's discovery responses at issue also include the following

language: "By way of further response, Dryvit states that it produced various documents in connection with the matter of *Ruff v. Parex, et al.,* and some of those documents, which are available for review and copying at a mutually convenient time, may be responsive to the general subject matter of this request." (Interrogatories 16, 17, 20, 21 and 22, Requests for Production 4, 5, 6, 9, 13 15 and 16).

In response, plaintiffs' counsel traveled to the discovery repository in North Carolina on December 18, 2000 at plaintiffs' expense. The repository documents were located in four oversized file cabinets with no index provided to plaintiffs' counsel. The documents were not organized by date, subject matter or in any other way. By example, a letter and the company's responsive memorandum dated only three days apart were separated by 1500 pieces of paper. Dryvit provided no identification by Bates stamp number of the documents responsive to plaintiffs' request. Since the repository houses the discovery in *In Re: Stucco Litigation and Ruff v. Parex, et al.,* both of which involve several parties, it is not surprising that the vast majority of documents reviewed by plaintiffs' counsel had no relevance at all to plaintiffs' claim against Dryvit. Although Judge Denson's Case Management Order No. 2 had been issued over four years earlier, no "Document Number Log" to be generated during the litigation under that order was ever provided to plaintiffs' counsel.

Plaintiffs' counsel reviewed one-half of the documents before returning to Nebraska and promptly advising counsel for Dryvit that he should not, under the discovery rules, be required to sift through huge volumes of documents to uncover the specific information relevant and responsive to his discovery requests. Further, Plaintiffs' counsel provided Dryvit with the list of documents he had found in North Carolina, identified by Bates number, and asked Dryvit to provide copies. Three weeks later, plaintiffs' counsel still had not received the documents or an index to the repository. The documents plaintiffs' counsel had specifically requested by Bates stamp were finally received on January 30, 2001. However, despite the persistent attempts by plaintiffs' counsel to receive an index of the documents located in the repository, an index has never been provided to the plaintiffs.

Over two months later, in April 2001, Dryvit advised plaintiffs' counsel by letter that it was still attempting to generate responses to plaintiffs' discovery but that "nearly all the documents in the repository are responsive to some degree." Dryvit requested an additional two weeks to assemble further responses to plaintiffs' discovery but one month later, no supplemental information had been provided to plaintiffs. On May 23, 2001, ten months after the discovery had originally been served on Dryvit, some additional information had been given to plaintiffs but Dryvit was still insisting on limiting the scope of some of the discovery requests.

In addition to the delay and method Dryvit has chosen to respond to plaintiffs' discovery, the plaintiffs have cited specific instances in which Dryvit claimed to have fully responded to plaintiffs' requests, but plaintiffs' own investigation revealed that the disclosure Dryvit provided was incomplete.

The issue raised by plaintiffs' motion to compel is whether the responses it received from Dryvit and its manner of providing this discovery complies with the goal of full and fair disclosure of relevant information as required under the Federal Rules of Civil Procedure. For the purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." F.R.C.P 37(a)(3).

■■■ All parties are entitled reasonable access to "all evidence bearing on the controversy between them, including that in control of adverse parties. This, of course, requires the absolute honesty of each party in answering discovery requests and complying with discovery orders." *Litton Systems, Inc. v. American Tel. & Tel. Co.,* 91 F.R.D. 574, 576 (S.D.N.Y.1981). Complete and accurate responses to discovery are required for the proper functioning of our system of justice. *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1201 (3d Cir.1989) The parties have a duty to provide true, explicit, responsive, complete and candid answers to discovery, *Dollar v.*

*Long Manufacturing N.C., Inc.,* 561 F.2d 613, 616 (5th Cir.1977), and their attorneys have a continuing duty to advise their clients of their duty to make honest, complete, non-evasive discovery disclosures, as well as the spectrum of sanctions they face for violating that duty. Fed.R.Civ.Pr. 26(g). Providing false or incomplete discovery responses violates the Federal Rules of Civil Procedure and subjects the offending party and its counsel to sanctions. *Hogue v. Fruehauf Corp.,* 151 F.R.D. 635, 637 (N.D.Ill.1993). To further assure compliance with the Federal Rules, all interrogatory responses are to be signed under oath by the party. Fed.R.Civ. Pr. 33(a) While this requirement does not exist for document production requests, when appropriate, the court may order a party to formally verify under oath that either no responsive documents exist, or if they exist, that all responsive documents have been disclosed. *In re Control Data Corp. Securities Litigation,* 1988 WL 92085, **6–7 (D.Minn.) [(citing *Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 42, 46 (D.D.C.1984); *Alexander v. Parsons,* 75 F.R.D. 536, 538 (W.D.Mich.1977))].

■■ Dryvit's objections to the discovery at issue are numerous, varied and presumably the basis of its motion for protective order, although that motion does not provide any detail of the relief being requested. Dryvit has objected to nearly all of plaintiffs' discovery requests by stating that the requests are overbroad, vague, ambiguous and unduly burdensome. However, these objections are not sufficiently specific to allow the court to ascertain the claimed objectionable character of the discovery request. This type of general objection is not a sufficient response to a motion to compel. Unless it is obvious from the wording of the request (as is the case with plaintiffs' Interrogatory 15 requesting the substance of all claims or representations by Dryvit concerning its EIFS system), an objection that discovery is overly broad and unduly burdensome must be supported by affidavits or offering evidence revealing the nature of the burden and why the discovery is objectionable. *Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 296–97 (E.D.Pa.1980) It is not sufficient to simply state that the discovery is overly broad and burdensome, nor is a claim that answering the discovery will require the objecting party to expend considerable time and effort analyzing "huge volumes of documents and information" a sufficient factual basis for sustaining the objection. *Id.*

In this case, Dryvit has objected claiming plaintiffs' discovery is unduly burdensome and directed the plaintiffs to find the information themselves in the North Carolina repository. (Interrogatories 16, 17, 20, 21 and 22 and Requests for Production 4, 5, 6, 9, 13, 15 and 16) Plaintiffs' counsel has tried this method of obtaining discovery but was provided no index or assistance in finding, among the thousands of documents stored there, the documents that are truly responsive. Dryvit argues that the plaintiffs must undertake the burden of collecting its discovery responses and that plaintiffs cannot claim this task is overly burdensome simply because the documents are not indexed and organized "in a fashion acceptable to plaintiffs' counsel." The clear implication of this statement is that an organizational system exists that has not been explained to plaintiffs' counsel. In the alternative, no system of organizing exists and Dryvit is passing the duty of sorting through the documents onto the plaintiff.

■ The discovery was served on Dryvit. The fact that production of documents would be burdensome and expensive and would hamper the party's business operations is not a reason for refusing to order production of relevant documents. 7 *Moore's Federal Practice* § 34.14[3] (3rd ed. 1997) Rule 26(c) speaks of "undue burden or expense," and "discovery should be allowed unless the hardship is unreasonable in the light of the benefits to be secured from the discovery." Wright, Miller & Marcus, *Federal Practice and Procedure* § 2214, p. 435 (1994).

■ Dryvit asserts that directing plaintiffs to find the discovery among volumes of irrelevant information complies with Federal Rules of Civil Procedure. To the contrary, producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34. *Stiller v. Arnold,* 167 F.R.D. 68, 70–71 (N.D.Ind.1996);

*T.N. Taube Corp. v. Marine Midland Mort. Corp.,* 136 F.R.D. 449, 456 (W.D.N.C.1991) The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information. *Caruso v. Coleman Corp.,* 157 F.R.D. 344, 349 (E.D.Pa. 1994); *Baine v. General Motors Corp.,* 141 F.R.D. 328, 331 (M.D.Ala.1991); *Snowden v. Connaught Laboratories, Inc.,* 137 F.R.D. 325, 332–33 (D.Kan.1991); *Pollitt v. Mobay Chemical Corp.,* 95 F.R.D. 101, 105 (S.D.Ohio 1982); *Baxter Travenol Labs. Inc. v. LeMay,* 93 F.R.D. 379, 383 (S.D.Ohio 1981); *Dunn v. Midwestern Indemnity,* 88 F.R.D. 191, 197–98 (S.D.Ohio 1980); *Kozlowski v. Sears, Roebuck,* 73 F.R.D. 73 (D.Mass.1976).

Citing *Discovery Proceedings in Federal Court,* 3rd Edition, § 17.16 Manner of Production, Dryvit acknowledges that Fed. R.Civ.P. 34 requires a party producing documents for inspection to either produce them as they are kept in the ordinary course of business or organize and label them to correspond to the categories in the requests. The repository is not Dryvit's business. There is no showing that Dryvit is currently unable, as it did in *In Re: Stucco Litigation and Ruff v. Parex, et al.,* to collect responsive records from its own business files rather than directing plaintiffs to a massive repository of records. There is also no evidence to explain why Dryvit has not kept a record for its own use concerning the location of its documents within the repository and the subject of those documents. It is clear that Dryvit did not and does not intend to organize records and label them to correspond with plaintiffs' discovery requests absent an order from this court. This method of conducting discovery does not conform to the letter, spirit, or purposes of the Federal Rules, "to secure the just, speedy and inexpensive determination of every action." Fed. R.Civ.P. 1.

With some requests (Interrogatories 6 and 7 and Request for Production 7) Dryvit attempted to unilaterally limit the scope by imposing geographical boundaries on the information it will provide. When asked to provide information concerning other complaints and suits against the company for damages allegedly caused by the EIFS system, Dryvit's initial response was to limit its response to proceedings and complaints arising in Nebraska. The plaintiffs objected, by letter dated December 29, 2000, and correctly advised Dryvit that this discovery addresses the issue of the company's notice that the EIFS system can allow water damage to homes.

Dryvit cannot simply agree to make documents available, but place geographical restrictions on that offer which, in its unilateral judgment, it regards as being reasonable compliance with discovery. *Laker Airways Ltd. v. Pan American World Airways,* 103 F.R.D. 42, 45–6 (D.D.C.1984) Under paragraph (d)(ii) of the Case Management Order No. 2 in *In Re: Stucco Litigation,* Dryvit has already compiled this same information with no geographic limit placed on that production. Likewise, this court is not convinced that claims or proceedings brought against Dryvit for damage caused by EIFS system are irrelevant and not the subject of proper discovery simply because they arose outside Nebraska's borders.

Dryvit has offered no persuasive evidence to support its unilateral decision to limit the scope of plaintiffs' discovery. Therefore, plaintiffs' motion to compel Dryvit to fully respond to Interrogatories 6 and 7 and Request for Production 7 will be granted.

Dryvit has, likewise, produced no evidence to support the numerous attorney-client, work product and trade secret privileges it asserted in response to plaintiffs' discovery. (Interrogatories 10, 11, 17, 20, 21 and 22 and Requests for Production 9, 11, 13 and 15) The party asserting a privilege and resisting discovery has the burden of establishing the existence of the privilege. Fed.R.Civ.P. 26(b)(5); *Duffy v. Dier,* 465 F.2d 416, 418 (8th Cir.1972); *National Union Fire Insurance Company of Pittsburgh v. Midland Bancor,* Inc., 159 F.R.D. 562, 567 (D.Kan. 1994). Blanket assertions of privilege are insufficient to satisfy this burden. *National Union Fire,* 159 F.R.D. at 567.

In addition, Dryvit failed to comply with Federal Rule 26(b)(5) and the court's progression order regarding withholding materials from discovery. No privilege log was prepared. [(See Progression Order ¶ 3); Fed.R.Civ.P. 26(b)(5), Advisory Committee Notes, 1993 Amendments; *Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 285 at n. 3 (D.Neb.1989) See also, *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir.1997) (Defendant met its burden of providing a factual basis for asserting a privilege when it produced a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit)] Where, as in this case, defendant claims that information requested and materials sought are privileged but does not state nor demonstrate the underlying facts or circumstances of the privilege or protection, that defendant has failed to fulfill its responsibility, and the claim of privilege fails. *U.S. v. Reserve Mining Co.*, 412 F.Supp. 705, 711 (D.Minn.1976), *aff'd and remanded,* 543 F.2d 1210 (8th Cir.1976) Although it has offered to produce "non-privileged" information, Dryvit "does not have the unilateral right to determine which documents were protected and consequently not reveal the existence of those documents." *Id.* at 712

Similarly, to withhold information under a claim that the information is "confidential" or a trade secret, Dryvit must demonstrate the confidential and proprietary nature of the discovery and the need for non-disclosure. In this case, Dryvit has objected to production of design and marketing documents, interdepartmental memoranda, engineering position papers and information on modifications made to the EIFS system by claiming that such information is confidential, proprietary and a trade secret. (Interrogatories 10, 20, 21 and 22, Requests for Production 13 and 15). Confidential business information is property, *(Carpenter v. United States,* 484 U.S. 19, 26, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987)), but the extent of the property right and the entitlement to withhold it from discovery depends on whether the business has attempted to keep it secret. Public disclosure of business information or trade secrets extinguishes the property right. *Ruck-*

*elshaus v. Monsanto Co.,* 467 U.S. 986, 1002, 104 S.Ct. 2862, 2872, 81 L.Ed.2d 815 (1984).

Under Fed.R.Civ.P. 26(c)(7), the party opposing discovery has the initial burden to demonstrate that the information requested is a "trade secret or other confidential research, development, or commercial information," and also that its disclosure would be harmful to the party's interest in the property. The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial. *In re Remington Arms Co., Inc.,* 952 F.2d 1029, 1032 (8th Cir.1991). Dryvit has failed to meet its burden, and its claims of confidential and trade secret and proprietary protection, made both in opposition to the motion to compel and as part of Dryvit's motion for protective order, are rejected.

Dryvit's motion for protective order requests this court to order that plaintiffs' discovery not be permitted, "or that the discovery may be had only on specified terms and conditions, including the designation of the time and place; or that the discovery may be had only by a method other than that selected by the plaintiffs." With the exception of Interrogatory 15, which the court finds is overly broad and unduly burdensome, the court grants the plaintiffs' motion to compel and denies Dryvit's motion for an order denying plaintiffs' discovery. Regarding the method of conducting the outstanding discovery, Dryvit has not suggested any reasonable discovery plan to resolve this controversy. Accordingly, the court will fashion one and order the parties to comply with a method to carry out the pending discovery owed to plaintiffs by Dryvit.

The plaintiffs have moved under Rule 37 for imposition of sanctions against Dryvit and argue for the sanctions available under Rule 37(b)(2)(B). Although the court has wide discretion to impose sanctions, it must comply by the rules in doing so. Dryvit has not failed to comply with a previous order of the court regarding this discovery and therefore Rule 37(b) sanctions are not applicable in this case.

However, under Federal Rule of Civil Procedure 37(a)(4), "if the motion [to compel] is granted, the court shall ... require the party ... whose conduct necessitated the motion ... to pay ... the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." The award of expenses is mandatory against a party whose conduct necessitated a motion to compel discovery unless the court finds there was a justifiable reason for opposing the motion. *Cal Dive Intern., Inc. v. M/V Tzimin,* 127 F.R.D. 213, 217 (S.D.Ala.1989); *American Hangar, Inc. v. Basic Line, Inc.,* 105 F.R.D. 173, 176 (D.Mass.1985). "The greatest operative principle of Rule 37(a)(4) is that the loser pays." Wright, Miller & Marcus, *Federal Practice and Procedure* § 2288, p. 657–58 (1994).

The circumstances of the particular case determine whether opposition to a motion to compel is substantially justified. *Transcontinental Fertilizer Co. v. Samsung Co., Ltd.,* 108 F.R.D. 650, 653 (E.D.Pa.1985); *American Hangar,* 105 F.R.D. at 176 However, courts have generally focused on the genuineness of the dispute and "whether an impartial observer would agree that a party had good reason to withhold discovery," when determining whether the opposition was reasonable and made in good faith. *Alvarez v. Wallace,* 107 F.R.D. 658, 662 (W.D.Tex.1985); *Cal Dive,* 127 F.R.D. at 217; *Transcontinental Fertilizer,* 108 F.R.D. at 653; *American Hangar,* 105 F.R.D. at 176–77.

I find that Dryvit's actions and inactions in this case cannot be justified. It has delayed responding to discovery and therefore the progression of this case, foisted the responsibility, labor and expense of compiling its discovery responses onto the plaintiffs, raised and argued that documents are privileged without providing this court with any evidentiary support for that claim and failed to provide full and complete responses to what it did choose to answer. Under Rule 37(a), the plaintiffs are entitled to an award for the expenses and attorneys fees incurred in bringing this motion.

IT THEREFORE HEREBY IS ORDERED:

1. Plaintiffs' Motion to Compel full and complete responses to Interrogatory numbers 6, 7, 10, 11, 16, 17, 20, 21 and 22 and Request for Production numbers 4, 5, 6, 7, 9, 13, 15, 16 and 17 is granted and the defendant Dryvit Systems Inc. shall comply with the terms and conditions set out below in paragraph 3. Plaintiffs' Motion to Compel regarding Interrogatory 15 is denied.

2. Except with regard to Interrogatory 15, the Motion for Protective Order filed by Defendant Dryvit Systems, Inc is denied.

3. The terms and conditions concerning fulfilling the discovery ordered by the court on plaintiffs' motion to compel are as follows:

A. Defendant Dryvit Systems, Inc shall, within 21 days, provide responses to the interrogatories under the signature of a company representative attesting under oath that all responsive information has been provided, and that all information provided is true.

B. Defendant Dryvit Systems, Inc shall, within 21 days, provide responses to the requests for production by either: i) allowing plaintiffs' counsel to review records at the Raleigh, North Carolina repository, providing counsel with an index system useful in locating the records and a paralegal or other staff person capable of assisting counsel in understanding this system and answering counsel's questions, or

ii) providing all responsive documents organized and labeled to correspond with the categories in the requests.

Plaintiffs' counsel shall have the right to decide which of these two options shall be used to obtain the documentary discovery, but the cost of providing this discovery, including any copying, staff, and reasonable travel cost of plaintiff's counsel shall be borne by Defendant Dryvit Systems, Inc.

If document discovery proceeds with plaintiffs' counsel reviewing the documents at Raleigh, North Carolina, the Defendant Dryvit Systems, Inc. shall verify under oath and file with this court a statement that all documents responsive to plaintiffs' discovery have been made available for review by plaintiffs' counsel at that location or through a separate submission previously served or within 21 days of the date of this Order.

If document discovery proceeds with plaintiffs' counsel receiving the compiled documents from the Defendant Dryvit Systems, Inc., a company representative of Defendant Dryvit shall sign and file with this court a statement under oath attesting that all documents responsive to plaintiffs' discovery have been provided.

C. Within 30 days of the date of this order, plaintiffs' counsel shall provide to defendant Dryvit Systems Inc. an itemized statement of plaintiffs' fees and expenses related to bringing this motion. The parties shall attempt in good faith to reach an agreement regarding the amount to be awarded by the court under Rule 37(a). If no agreement can be reached, plaintiffs' counsel shall submit his application for fees to this court within 45 days of this order for the court's resolution of this issue.

D. The clerk shall make any award of attorneys fees and expenses herein a part of any judgment eventually entered in this case unless the parties file a statement with the clerk advising that the award of fees and expenses was paid prior to judgment.

## EXHIBIT C

United States District Court
Eastern District of North Carolina

IN RE: STUCCO LITIGATION

Master File No. 5:96–CV–287–BR(2)

THIS DOCUMENT RELATES TO:

ALL CASES

EXHIBIT C—Continued

*Document Numbering System and Document Depositories*

Pursuant to agreement of counsel, the court orders that the production of all documents in this action from whatever source comply with the following procedures:

1. All documents produced shall be Bates-stamped with consecutive numbers. Each entity shall be assigned a two-letter prefix which shall precede the Bates stamp on all documents produced by the entity. The following prefixes are hereby assigned:

(a) The plaintiffs—PL

(b) Dryvit—DR

(c) STO—ST

(d) Shield—SH

(e) Parex—PA

(f) Thomas Waterproof Coatings—TW

(g) Continental Stucco Products—CS

(h) Corev—CO

(i) Finestone—FI

(j) Omega—OM

(k) Pleko—PK

(*l*) Senergy—SE

(m) Thoro—TH

Documents produced by third parties shall be Bates-stamped with a prefix to be agreed upon in advance of production by counsel. Third parties from whom discovery has already been requested are hereby assigned the following prefixes:

(a) EIMA—EI

(b) NAHB—NA

2. At the first use of a document, it will be assigned a "Document Number" by the party first using it, either at deposition, attached to an affidavit, at a hearing, at trial, or any other use. That document will then retain the same Document Number throughout the litigation. Plaintiffs' and defendants' Liaison Counsel will be responsible respectively for maintaining a plaintiffs' and a defendants' Document Number Log where all documents which have been assigned a number will be logged with a brief description of the document and its Bates number. The document log should substantially conform to the following format and be available upon

reasonable notice to all parties in the litigation:

| Document No. | Bates No. | Description |
|---|---|---|
| 431 | DR00642–DR00643 | 3/14/94 letter from Mr. Johnson to Ms. Jones |

Plaintiffs will number those documents they use first with numbers between 1 and 50,000. Defendants will number those documents they use first with numbers starting with 50,001.

3. All documents produced in the litigation will either be produced: (1) at the requesting parties Liaison Counsel's office, organized according to the request number, at a date and time agreed upon by counsel, or (2) at the place of business where and in the manner in which the records are ordinarily kept.

Entered this 30th day of April 1996 with the concurrence of U.S. District Judge W. Earl Britt.

U.S. District Judge W. Earl Britt

ALEXANDER B. DENSON

United States Magistrate Judge